```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DIANE TETI,                      :
                                 :
     Plaintiff,                  :    CIVIL ACTION
                                 :
v.                               :    No. 08-cv-0983
                                 :
PHOENIX INSURANCE COMPANY,       :
                                 :
     Defendant.                  :
```

**MEMORANDUM and ORDER**

**Joyner, J.**                                          **January 29, 2009**

Before this Court is Defendant, Phoenix Insurance Company's ("Phoenix"), Motion for Summary Judgment (Doc. No. 14), Plaintiff, Diane Teti's ("Teti"), Response in Opposition (Doc. No. 17) and Defendant's Reply thereto (Doc. No. 19).

**Background**

Plaintiff and Defendant have stipulated to the basic facts, as recited here.  On January 9, 2007, a retaining wall located on plaintiff's premises at 251 Gray St., Philadelphia, PA, 19127, partially failed and collapsed.  At the time of the collapse, plaintiff was insured under a Homeowners 3 Insurance Policy ("Policy").  On the same day, the City of Philadelphia ("City") declared the premises "imminently dangerous" and plaintiff was officially informed that she was to vacate the premises

1

immediately and make repairs or demolish the premises.[1]  On the same day, plaintiff notified defendant of the condemnation and requested coverage under the Policy.  On January 10, 2007, Phoenix "confirmed a recent inspection of the home" and refused coverage, claiming that the loss did not fall within the terms of the Policy.  Def. Mot., Exh. D.  On February 12, 2007, and March 6, 2007, the City notified plaintiff again that she must vacate and repair or demolish the premises.  Plaintiff sent this notification to Phoenix on March 6, 2007.  Phoenix proceeded to send an engineer to Teti's property to inspect the cause of the retaining wall collapse.  Randy Patacity, P.E., the engineer, concluded in his April 5 Report that long-term deterioration and recent, extensive rainfall had caused the collapse.  Def. Mot., Exh. G.  On May 3, 2007, the City filed a civil action in equity against Teti in the Court of Common Please in Philadelphia County requesting a permanent injunction for Teti to vacate the premises, either repair or demolish the premises and pay a fine for each day that she remained in violation of the Code. Plaintiff then forwarded this Complaint to Phoenix, requesting that they defend the action.  On August 7, 2007, Phoenix responded, asserting that the loss was not covered under the policy and refusing to defend the action.  Teti subsequently had

---

[1] The City's condemnation sign placed on the property reads "This building . . .  is in imminent danger of collapse."  Def. Motion, Exh C.

2

the premises evaluated by Earth Engineers, Inc.  Teti then sent another letter to Phoenix on August 23, 2007, citing the new report and requesting defense; Phoenix, again responded denying the request on September 18, 2007.  On December 5, 2007, Teti sent a final demand letter to Phoenix.  Finally, on February 15, 2008, Teti filed suit against Phoenix in the Court of Common Please of Montgomery County alleging breach of contract and bad faith denial of coverage.  Phoenix then removed the action to this Court pursuant to 28 U.S.C. § 1441(a) because the parties are diverse as to jurisdiction and the amount in controversy exceeds $75,000 exclusive of interests and costs.  Teti later sold the premises below market value due to its inhabitability and is seeking damages for Phoenix's alleged failure to provide her with a defense and indemnification for the loss of selling the now-condemned home.

### Standard

Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden."  Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).  In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in their favor.  See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

## Discussion

In this Court's reading of Plaintiff's Complaint, it appears that plaintiff asserts two distinct claims: bad faith in denial of coverage and breach of contract.  Each of these counts will be addressed in turn.

**I. Bad Faith in Denial of Coverage**

Plaintiff has alleged bad faith denial of coverage against defendant for denying her claim following the collapse of the retaining wall.  Defendant denies that it acted in bad faith and asserts that the claim was properly denied under plaintiff's Policy.

> In the insurance context, the term "bad faith" has
> a distinct and universally accepted meaning: . . .
> "Bad Faith" on part of insurer is any frivolous or
> unfounded refusal to pay proceeds of a policy; it

4

>is not necessary that such refusal be fraudulent.
>For purposes of an action against an insurer for
>failure to pay a claim, such conduct imports a
>dishonest purpose and means a breach of a known
>duty (i.e., good faith and fair dealing), through
>some motive of self-interest or ill will; mere
>negligence or bad judgment is not bad faith.

Woody v. State Farm Fire & Cas. Co., 965 F. Supp. 691, 693 (E.D. Pa. 1997) (citing Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994)).  Damages for bad faith may be awarded pursuant to 42 PA. CONS. STAT. § 8371 (1990) which allows for specific damages if the court "finds that the insurer has acted in bad faith toward the insured."  It is clear in this context that even bad judgment on behalf of the insurer will not constitute bad faith in Pennsylvania.

In the present action, following Teti's claim, Phoenix conducted an engineering assessment and the engineer concluded that the collapse of the wall, and therefore any damage to the premises, was a result of long-term deterioration and rainfall, two causes explicitly not covered by the Policy at issue.  Def. Mot., Exh. G.  Further, Phoenix claims, no matter the reason for the collapse, retaining wall collapses are not covered under the Policy pursuant to Section 8. Collapse.  Following its denial of coverage based on the engineer's report and its interpretation of the Policy, defendant refused to defend the City's action against Teti.

Plaintiff claims, following a separate assessment, that

hidden root decay due to the removal of a tree was the actual reason for the collapse and alleges that the engineer engaged by defendant did not have enough information to make an accurate finding.  However, outside of its factual dispute surrounding the cause of the collapse and the meaning of Section 8 of the Policy, plaintiff has not provided any evidence of an unfounded or frivolous refusal to pay on the part of Phoenix.  In addition, as to Phoenix's refusal to defend, plaintiff has offered no evidence of bad motive and contends only that she disagrees with Phoenix's position as to the cause of the occurrence and the nature of the City's action.

In a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party makes such a showing, the burden shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial." Fed. R. Civ. P. 56(e).  In doing so, the party opposing summary judgment cannot simply rest on the allegations contained in its pleadings and must establish that there is more than a "mere scintilla of evidence in its favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In this case, plaintiff has argued that its interpretation of the contract and its engineering reports are, in fact, the correct ones; however, even if this is ultimately

the case, plaintiff has failed to support her claim of bad faith with any evidence to suggest that the insurer acted with self interest or ill will as outlined in Pennsylvania law.  Phoenix's positions were based upon an engineering report and the wording of the Policy itself; it cannot be said that the decisions were unfounded.  Thus, summary judgment is granted as to plaintiff's claim of bad faith and this count is dismissed.

**II. Breach of Contract**

Plaintiff alleged breach of contract as a result of the denial to cover the incident at issue and the denial to defend the action initiated by the City.  Defendant argues that as the claim by the City was one in equity, it clearly had no duty to defend the plaintiff because no "occurrence," within the meaning of the contract, was alleged in the Complaint.[2]  In Pennsylvania, "[a]n insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage."  Allstate Ins. Co. v. Drumheller, 285 F. Supp. 2d 605, 610 - 611 (E.D. Pa. 2003) (citing Pacific Indemnity Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985)).  "A refusal without good cause to defend breaches this obligation and gives rise to a cause of action regardless of the

---

[2]"Occurrence" is defined as, "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in bodily injury or property damage." Policy, Definitions, 6.

good faith of the insurer."  Gedeon v. State Farm Mut. Auto. Ins. Co., 410 Pa. 55, 58-59 (Pa. 1963) (citing King v. Automobile Underwriters, Inc., 409 Pa. 608, 187 A.2d 584 (1963)).  "If coverage depends upon the existence of facts yet to be determined, the insurer is obliged to provide a defense 'until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage.'"  Safeguard Scientifics v. Liberty Mut. Ins. Co., 766 F. Supp. 324, 328-329 (E.D. Pa. 1991) (citing C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co., 467 F. Supp. 17, 19 (E.D. Pa. 1979)).  It is then clear that "[a]n insurer's failure or refusal to defend a claim within the scope of an insurance policy constitutes a breach of contract . . . ."  <u>Vanderveen v. Erie Indem. Co.</u>, 417 Pa. 607, 608 (Pa. 1965) (citing <u>King</u>, 409 Pa. at 609).

Turning to the claim at issue, while a suit in equity by the City did not seek compensation for "property damage" per se, the claim would never have arisen absent the property damage, the remedy demanded by the City was repair of the property in conformity with Title 4 (Building) of the Philadelphia Code or demolition, and the City asked for the authority to destroy the entire premises and place a lien on it to recoup the costs – directly implicating a claim for property damage as a result of an occurrence.  While not a classic claim for property damage, the injunction at issue was a claim that demanded the repair of

the damaged property or demanded the right to compensation after it destroyed the property itself.  It is clear that the result of a lack of defense would be a lien for the cost of the demolition of the entire premises.  In this instance, the City's method for condemning the premises, gaining authorization to demolish it, and seeking damages resulting from this property damage was to initiate a permanent injunction.  Additionally, property damage giving rise to an occurrence, as defined in the contract, includes "loss of use of tangible property."  Loss of use of insured property was exactly what Teti faced in the City's action.  This Court declines to find that Phoenix had no duty to defend in this unique situation based only on the fact the claim was one in equity.  However, we must now turn to the question of whether the retaining wall could potentially have been covered by the Policy, triggering the duty to defend in the action. Drumheller, 285 F. Supp. 2d at 610-11.

This Court recognizes that plaintiff and defendant have taken differing stances as to the cause for the collapse of the retaining wall, and hence, the indirect cause of the property damage.  In the light most favorable to the non-moving party, this Court will accept as true the factually contentions made by plaintiff as to the cause for the collapse of the retaining wall,

i.e. that hidden decay caused the collapse.[3] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). It should be further noted that she does not assert that the house itself collapsed. Teti, therefore, claims that the retaining wall is a part of the insured property and that its collapse due to hidden decay was a covered occurrence under Section 8.Collapse. In this context, as Phoenix is denying coverage due to an exclusion, it bears the burden of showing that the exclusion is applicable to the occurrence and we review the incident accordingly. Federal Ins. Co. v. General Machine Corp., 699 F. Supp. 490, 495 (E.D. Pa. 1988) (citing Daburlos v. Commercial Ins. Co., 521 F.2d 18 (3d Cir. 1975)).

We look first to the Policy itself, which states in Section 1 - Perils Insured Against(1), "We do not insure . . . for loss (b) Involving collapse, except as provided in Additional Coverage 8. Collapse under Section 1 - Property Coverages." Def. Mot, Exh. B, Policy, p. 7. Referring to 8. Collapse, the Policy reads that "collapse" is the "abrupt falling down or caving in of a building or any part of a building." Section 8(a)(2) clarifies, "[a] part of the building that is in danger of falling down or caving in is not considered to be in a state of collapse."

---

[3] It should be noted that the possible reasons for plaintiff's loss supported by Phoenix's engineer, "water saturation, earth movement, and wear and tear," are clearly not covered under the policy. Policy, Coverage A – Dwelling and Coverage B – Other Structures (2)(6); Section I – Exclusions(A)(2) and (3).

Hence, the retaining wall, and not the house itself, is in a state of collapse as defined under the Policy.  Section 8(b) reads "We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following: . . . (2) Decay that is hidden from view . . . ."  Hence, plaintiff contends that the occurrence is covered by the Policy because the retaining wall was part of the building and collapsed due to hidden tree decay.

However, Section 8(c) further states that "Loss to a[] . . . retaining wall . . . is not included under b.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building."  For plaintiff's interpretation to be plausible, it would mean that Section 8(b) was flatly contradictory, i.e. that the term "part of the building" in Section 8(b) includes retaining walls but then specifically excludes retaining walls in subsection (c) that places limits on the coverage.  "Where the language of the policy is clear and unambiguous, a court is required, as with any contract, to enforce that language."  Federal Ins. Co. v. General Machine Corp., 699 F. Supp. 490, 494 (E.D. Pa. 1988) (citing Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 304, 469 A.2d 563, 566 (1983)).  "If possible, a court should interpret  the policy so as to avoid ambiguities and give

11

effect to all of its provisions." Id. (citing Houghton v. American Guaranty Life Ins. Co., 692 F.2d 289, 291 (3d Cir. 1982)). Finally, "the language of a policy may not be tortured . . . to create ambiguities where none exist." Drumheller, 285 F. Supp 2d at 612-13 (citing Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir. 1985)). Accordingly, we must enforce the clear language of Section 8. Collapse that excludes loss to a retaining wall in occurrences involving collapse. Hence, even if hidden decay was in fact the cause of the collapse, collapse of the retaining wall is specifically excluded under Section 8. Collapse (c). In conclusion, we cannot agree that the collapse of a retaining wall due to hidden decay is covered under Section 8(b) because collapse of a retaining is specifically excluded by name in Section (c).

As the occurrence was not covered, Phoenix had no duty to defend. As stated, [t]The duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy." Drumheller, 285 F. Supp. 2d at 610-611 (citing Cadwallader v. New Amsterdam Cas. Co., 396 Pa. 582, 152 A.2d 484 (1959)). In this instance, Phoenix originally notified Teti that it did not have a duty to defend because the occurrence was not covered under the Policy and has since shown that, pursuant to the Policy, the harm sustained by Teti was indeed not covered. It logically follows

12

that if the occurrence was *not even potentially* covered under the Policy, then Phoenix does not have a duty to to indemnify Teti for the occurrence.  <u>Drumheller</u>, 285 F. Supp. 2d at 613.  As the collapse of a retaining wall was not covered under the Policy and Phoenix properly denied coverage, the count for breach of contract is dismissed.

    An appropriate Order follows.

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| DIANE TETI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 08-cv-0983 |
| | : | |
| PHOENIX INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |

ORDER

AND NOW, this   29th   day of January, 2009, upon consideration of Defendant, Phoenix Insurance Company's ("Phoenix"), Motion for Summary Judgment (Doc. No. 14), Plaintiff, Diane Teti's ("Teti"), Response in Opposition (Doc. No. 17) and Defendant's Reply thereto (Doc. No. 19), it is ordered that the Motion is GRANTED for reasons set out in the attached Memorandum.  It is further ORDERED that Plaintiff's claims are hereby DISMISSED.  The Clerk of Courts is directed to close the case for statistical purposes.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.